Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and His Honorable Court. Good morning. I'm pleased to be sitting today with my colleagues Judge Britt Grant and Judge Julie Carnes. This is our last day with Judge Carnes and I know that Britt and I have enjoyed sitting with her. I thank you to Ms. Geddes for serving as our courtroom deputy and timekeeper. As you see we are back to Zoom and that's unfortunate but and I thank all the attorneys for sort of the last minute switch and being flexible with that. Hopefully this is a temporary situation and we'll all be back in person soon. For those of you who have not appeared before us, we operate on the traffic light system. Your time remaining will first appear in green and when you get down to two minutes it will appear in yellow. It will turn red when you have reached the end of your allotted time. We have four cases on our calendar today. Our first case is Callahan v. United Network for Organ Sharing. We have Ms. Coberly and Mr. Roth. Ms. Coberly, if you are ready to proceed, please begin. I see you have four minutes saved for rebuttal. I do. Good morning, your honors, and may it please the court. I'm Linda Coberly and I represent the United Network for Organ Sharing. We're here to appeal and order unsealing a series of private emails that were produced under a protective order and a confidentiality order from the court. The plaintiffs submitted them as a basis for their APA claim but the court excluded them from consideration. We think that means they're not judicial records at all, but at a minimum, the district court was required to take their irrelevance into account in weighing whether there was good cause to keep them under seal. The district court didn't consider that. It ignored the cases saying that the public's right of access weighs less heavily for documents that have no relevance to the merits of the case. It also ignored our evidence about the case and to the public, which has a serious interest in ensuring rigorous debate and good policymaking for organ allocation, which Congress entrusted to the board of the OPTN. Ms. Coberly, let me ask you a question sort of right out of the gate. I know that what was at issue in this lower court determined that it was not. HHS is involved in this lawsuit. What are we to make of the fact that HHS has not weighed in on this issue at all? Certainly, the emails relate to discussions about and for and with HHS. Actually, the emails relate to policy, to organ allocation policy, and they're part of a debate that took place at the OPTN. HHS has made clear, actually, in the Iowa litigation in that context that it bases its review on the decision made by the OPTN board and on the reasons and rationale articulated by the OPTN board. Here, the OPTN board is a 42 in public. All of its rationale and scientific basis is available to the public and part of the administrative record. That's what HHS is concerned with. From HHS's perspective, these are private emails that are UNOS's to argue are confidential. Our argument is not that these emails are related to HHS. Our argument is that these emails, first of all, are categorically irrelevant to any issue before the court. UNOS is not an agency. They were obtained under false pretenses. They're being unsealed for improper purposes. They shouldn't be part of the judicial record. They should have remained confidential and under seal. Did you move to strike these emails after they were filed? We didn't, Your Honor, because it would have been futile. We had just tried to raise all of the arguments we're raising here, and the court didn't consider them. It simply ordered us to produce the documents and ordered the filing, allowed the plaintiffs to file the documents on the record as a discovery sanction against us. We had just been through that process. We had just raised these arguments, and it would have been futile to move to strike the documents at that point. We were also in the middle of, this was between Thanksgiving and Christmas of 2019, we were engaged in a very intense process of producing documents, briefing, and over the course of weekends and holidays to litigate whether there would be a preliminary injunction. Ultimately, the preliminary injunction was denied. The plaintiffs didn't appeal that decision, but they did move to unseal the documents. Within a very short time, we were litigating these but a motion to strike would have been futile. How do you square your objection to these emails with our analysis and Abbey v. Products? These were attachments to a substantive motion, not to a discovery motion, and so thus they are judicial records. How do you get around Abbey v. Products and say that these should be excluded from the judicial record? Well, for two different reasons, Your Honor. First of all, this court has never evaluated the common law right of access in a case quite like this one, where documents were filed along with the substantive motion, but the court specifically found them categorically irrelevant to that motion and to the merits of the case. What we've done in our briefs is look to the point, and those principles tell us it's not just about whether a document was filed on the record, and it is about whether the documents are integral to the judicial resolution of the merits. You may find those principles, but I think you'll find that the words of our cases say that it is about whether a document is attached to a substantive motion. I know in your brief, you say, you quote this court as saying, the mere filing of a document does not transform it into a judicial record. Do you recall what we said immediately after that? Yes, yes, and I think the argument we're making is really based on the nature of these motions, and they really did two different things. These motions both established the contours of the claims, so in some sense, these were really hybrid motions, and the court specifically excluded these documents from consideration as a category, not based on their specific context. I'm going to finish that quote for you, which is, for example, we have determined that when documents have been filed in discovery, they only constitute judicial records if they are filed with pretrial motions that require judicial resolution of the merits of an action. Now, you have arguments about why that's not true, but for my part, I think it's important when you're quoting cases to this court to give us the full context of it. I think it's pretty misleading to leave out that second part. Absolutely, and I appreciate that, Your Honor, and we did not intend to mislead the court. What we're trying to do is to take the court's cases, none of which deal with precisely this situation, and draw principles, but I take your point. With that in mind, I'd like to move to our second argument, which is that, at a minimum, the court should have considered the categorical irrelevance of these documents in relation to the motion to unseal and the good cause showing that we've made. This court has explained, and other courts have explained, that the presumption of access is dispositive documents that relate to the merits of the case. These documents don't, so even assuming they are judicial records, the presumption of access is qualitatively different than it would have been had the documents been related to the merits of the case. Here, the court held that these documents, as a category, are irrelevant and not part of the administrative record. That's UNOS is not an agency. That's because the plaintiffs failed to tie any allegations of bias to HHS, which is the only agency in this case, and it's because these emails were internal deliberative communications between UNOS employees and volunteers, and those documents wouldn't have been part of the record, even if the court were to have held that the OPTN was an agency. That was actually one question I couldn't quite figure out. You submit that you don't have an agency, but that the agency deliberative privilege applies. Can you have it both ways like that? Well, it was an alternative argument, Your Honor, and that's the way the court addressed it as well. The plaintiff's theory in this case from the beginning is that UNOS was an agency. We actually moved to dismiss on the ground that it wasn't an agency, but because the plaintiffs were seeking a preliminary injunction, we never got a ruling on that motion until after the preliminary injunction was denied. So we had attempted to litigate the agency issue and hadn't been able to get any relief in respect to it at that time. Therefore, when we proceeded into discovery, we made alternative arguments. We said, first of all, UNOS is not an agency, but if it were an agency, these kinds of internal communications are the kinds of If it's not an agency, as you say it's not, then does that argument apply? If it's not an agency, then the documents should never have been produced in the first place, and UNOS shouldn't even be in this case. So it's an alternative argument. We don't contend that a non-agency has a deliberative process privilege. We said from the beginning UNOS wasn't an agency, but the plaintiffs said it was, and the plaintiffs, in fact, said it was because of UNOS's bias, what plaintiffs described as UNOS's bias, that they should get documents reflecting what they suspected were secret communications between UNOS and New York-affiliated individuals. Now, when it came time to be more specific about that, they named people they knew to not be New York-affiliated individuals, but people who they knew disagreed with them on matters of policy. And when they saw the emails, they put them on the docket ostensibly in support of a preliminary injunction, and when they lost the preliminary injunction, they didn't appeal, they only moved to unseal the documents. This is not what a public access motion generally looks like. In most of this court's cases on this subject, one of the parties or the parties seeking the documents is a media outlet. Here, it wasn't a reporter that moved to unseal, it was the plaintiffs themselves. They don't need to unseal the documents to use them if they choose to, if they see some reason to at any point in this litigation. What they want is to use these emails to serve their commercial interests in internal policy, politics at UNOS, in pressure campaigns, and in other litigation. And you can see that in the appellate brief where they say that the CEO may pay a heavy price. Ms. Coberly, you've reached the end of your time, but you've got some time for rebuttal coming up. Thank you very much. Mr. Roth. Thank you, Your Honor. May it please the court, Jacob Roth for the plaintiff appellees, the hospitals and patients. I'd like to start with the judicial records issue, which is I think the principal legal question on appeal. And respectfully, UNOS is just wrong on the law. They're asking this court to adopt a backward looking test that basically starts not with the motion that's filed, but with how the court ruled on the motion, and then tries from that opinion to reverse engineer, figure out exactly which portions of the briefing or exhibits control that outcome. This court specifically rejected that argument in AbbVie, and every other court that has been presented with that theory has also rejected it. The DC Circuit, the First Circuit, the Second Circuit. Courts reject that approach because first of all, it's too narrow. And second of all, it's practically unworkable. Instead, what this court has adopted, and this goes all the way back to Chicago Tribune, is a bright line test that in the case, or was it merely a discovery related fight? And if it's a discovery fight, the court has said, we're going to carve that out from the common law right of public access, because discovery is essentially a private ancillary issue that doesn't implicate the same concerns as when the court acts in a real adjudicatory manner. Mr. Roth, what about the issue that's been raised by opposing counsel, the issue of gamesmanship, that you have irrelevant documents that are embarrassing, and where would that end? Could in any litigation, say, not this case, but in any litigation, somebody finds a very embarrassing email, say it's a contract dispute, and then they find evidence of something salacious. Could they just tack it onto a substantive motion to embarrass the party when it has nothing to do with it? Where does that end? Yeah, Your Honor, let me make points in response to that abuse argument that we've heard a lot about from UNOS. The first point I would make is, I think it's overstated at the outset, because remember, we are talking about a presumption. This is not the end of the story. Once you attach something, it doesn't mean it's automatically subject to disclosure. It's just subject to the presumption that the public should have access, and that's subject to being countered by good cause, which we'll get to. Well, actually, I have a question about that. Which side has the burden of showing good cause? I know in Abdi Products, we noted that the party who is seeking modification of a protective order bears the burden of proof when the party seeking to keep those documents sealed already showed good cause earlier to seal the documents. How do you sort that out here? Who's got the burden to show good cause? I think it's the party trying to overcome the presumption as the burden of showing that good cause exists to overcome the presumption. I don't think here there was any prior determination that's being reconsidered. It's just this is the first occasion, I think, on which the court was analyzing this, and the burden is properly on the party seeking to rebut the presumption. So there's been some dispute in the briefs back and forth about what the documents were initially sealed, how they came up through discovery. Can you just give us a short explanation of that? And then if Ms. Coberly disagrees, I'm sure she'll share with us in rebuttal. Sure, Your Honor. As Ms. Coberly mentioned, all of this happened over a very compressed time frame while the preliminary injunction motion was being considered and briefed. Actually, many of the documents at issue were produced after our reply brief was filed, which is why the court allowed a supplemental brief to be filed. And UNOS designated almost everything that it produced that wasn't already in the public domain as confidential. And so when we filed these materials, the materials that we did file, which were a very small percentage of what had been produced, we filed those under seal consistent with the protective order because they had been designated as confidential. And it wasn't until after the motion was adjudicated that we teed up the question of these should really be unsealed because there isn't good cause to keep them from the public. Had the district judge made a different decision? Had she said, I'm going to keep these sealed, what would your position be as to that? If her order indicated all the arguments that Ms. Coberly is making, they weren't relevant to my decision, they were gratuitous. While they were filed in a substantive motion, they really weren't something that impacted me greatly. She didn't say that exactly. It wasn't something she had. What would your position be then? Does everything change if she had made a different decision? In other words, we're on an abuse of discretion standard. Right. Well, your honor, the first question, the judicial record question is a legal one that the court reviews de novo. If they are judicial records and the court does the balancing under rule 26, that analysis is reviewed for abuse of discretion. And obviously if the district court had come out the other way on that, we would have a much tougher argument because we would be saying that that was an abuse of discretion. We probably would be arguing that, but the standard we ruling would be against us rather than in our favor. I do want to get to good cause balancing, but if I could just return to Judge Branch's question about abuse, because I had three points. So I made the first, which is that it's a presumption. The second point I wanted to make was that this court addressed that concern in AbbVie as well, and specifically said that there are ample tools that a district court already has at its disposal to address that concern. Principally rule 12F, the court can strike material that is impertinent, immaterial, or scandalous. And under rule 11, the court can sanction a party or council that finds that a filing was made for an improper purpose. And AbbVie concluded that was sufficient to address this concern. Now, the third point I want to make goes back to a question Judge Grant asked, which is UNOS did not seek either form of those forms of relief in this case. Didn't ask to strike, didn't ask for sanctions, and Ms. Coberly noted that that's because it was futile. Actually, I agree with that. I think it was futile because the district court well understood that this material was not immaterial or impertinent. The district court authorized discovery of this material. The district court discussed and analyzed the material at length in its opinion, and specifically explained that it was relevant to multiple questions in the case, including whether UNOS had engaged in bad faith conduct, whether the OPTN is an agency, the preliminary injunction factors, the due process inquiry. Now, it's true the court ultimately did not grant relief on those grounds, but that doesn't retroactively strip the public of its right to access the material. And that's kind of this game that's being played here with the word relevant. The material was not irrelevant. We didn't win. And I think UNOS is sort of conflating the two. Well, you know, the court didn't grant relief, so therefore everything you submitted was irrelevant. That's not the test. That's, again, what this court rejected in AbbVie and what other courts have rejected because it constricts the public's right more than is appropriate, and it is unworkable from a timing perspective. You would never be able to figure out if something is subject to the public right until after the court has ruled. And there's actually a second part to that, which is which judicial ruling are we looking at? This was a preliminary injunction. The same issues are now under consideration in the district court at summary judgment, and the same materials have been submitted in connection with summary judgment. If summary judgment is denied and this case goes to trial, many of these materials would be trial exhibits. If this case comes back to this court on appeal, it will be part of the appellate record. And so this idea that we can kind of snapshot the preliminary injunction order and say, well, you lost a preliminary injunction, so all this stuff is clearly irrelevant, I think is misleading, and it ignores the larger context of the litigation. These issues of whether UNOS is an agency, whether UNOS engaged in bad faith, conduct bias, predetermination in making this extremely important policy change, are the key issues in the case that are going to continue to be briefed, argued, and decided long past the preliminary injunction phase. I think is another reason why that argument is misguided. Now, in the briefing, although not an argument, UNOS emphasized the advanced local media decision. So I just want to point out advanced local media did not overrule 20 years of this court's precedent on that bright line test between substantive and discovery motions. In advanced local media, the document at issue had not been filed at all. And so the court said, we can't apply this test that looks to what the filing was when there was no filing. And so there the court said, well, even though it wasn't filed, this document was so integral to the adjudication that we're going to treat it as a judicial record. That, of course, is an expansion of the common law, right? Doesn't in any way take away from the test this court established in Chicago Tribune and repeated in Romero and Abbey, under which these materials are plainly subject to the presumption of public access. If I could turn now to the second point, which is the good cause balancing. And as Judge Carnes pointed out, the standard here is abuse of discretion. This is an area where the district court gets maximum deference. And in this case, the district court got the standard right, considered the factors, explained its reasoning in a pretty thorough written opinion, and actually distinguished among the records. It's not like the court made a blanket determination. The court actually divided up the materials into buckets and categories and did not unseal all of them. The court said a couple of them involved trade secrets and would not be unsealed. Some needed to be redacted. I think all of that confirms there was no abuse of discretion here. And when the district court actually balanced the interests, I think the way it did so was plainly reasonable and sufficient for this court to affirm. And I'll just make a few points about the balancing here as we see it. On the side of public access and disclosure, I think it's critical that this policy change that we're litigating is a life or death issue affecting the entire country. This is a really important policy change. It dramatically reversed the way organs were allocated for decades in a way that favored certain parts of the country over other parts. This type of public policy issue is where the public right of access has its most important application. And we think there's a really compelling interest for the public, for patients who are affected by this change, for Congress, which has set up this rather unique regulatory scheme where you have this private nonprofit that is setting policy subject to pretty minimal oversight, as it turns out by HHS. This is an area where there's a really strong interest in understanding the way the policy was developed, formulated, approved, particularly when there are accusations of manipulation and abuse. Meanwhile, if you turn to the other side of the balancing, you don't have here any of the typical types of information that have justified sealing in other cases. There's no personal information here, medical, family, anything like that. There's no trade secrets with the exception of the material that the district court did seal. There's obviously no law enforcement or national security interests, just that type of thing that isn't present in these materials at all. And so instead, what Eunice has emphasized is this idea of a chill on the deliberative process. And on that, what I would say is, first of all, the district court considered it, the district court acknowledged that as an interest. The court just concluded that it was so generalized, and it wasn't tied to a specific person, a specific harm, or even a specific to overcome the interest on the other side. And again, that's the type of determination that we generally allow district courts to make. And then the second point on that is there is sort of a having it both ways quality to this argument, because again, the Eunice's position is they're not an agency, yet they're trying to get special protections that apply to agencies. Your honors, if there are no further questions, we would ask the court to affirm because under this court's precedent, these materials are plainly judicial records subject to the presumption, and there was no abuse of discretion by the district court in concluding that good cause had not been established to overcome the presumption. Thank you, Mr. Roth. Ms. Coberley, you have four minutes on the vote. Thank you. I would like to address two statements that I do want to correct that counsel made. First, there was a court order saying that these documents should be sealed. It was the same order that allowed the requested production and allowed the supplemental filing as a discovery sanction. So there was a specific court order, and that's why the plaintiffs here are the movement and bear the burden to unseal the documents. Secondly, the order said that they should be, that they could be filed, but they would be sealed because of a discovery violation. The order said that they must be produced because of a discovery because according to the court, we should have raised the deliberative process privilege earlier in the kind of rapid fire series of objections we were raising. So the court said we had waived that privilege for purposes of discovery. We would be required to produce the documents. The plaintiffs would be allowed to file a supplemental filing attaching whatever they wanted, but that those documents should be restricted to the parties. So the court specifically held that the documents would be sealed. That's why the plaintiffs here are the movement. Secondly, the district court did not say that these documents were relevant to any other issues, and the plaintiffs have never before argued that they are. They never argued that these documents were relevant to agency or any of the other issues. All the court said was that the documents were still part of the court's record and the record on any appeal to the extent plaintiffs challenged the court's ruling. And of course, no appeal was filed. Now, Mr. Roth said himself that the presumption, though, is not automatic. And what that means to me is that there must be a meaningful and robust good cause analysis. And I think in that analysis, it's really important to understand how the plaintiffs have used the courts here. The OPTN is a private, non-governmental, consensus-driven entity that represents the OPTN. And they were outvoted on a matter of policy. So they filed an APA lawsuit. They named the OPTN or UNOS, even though it's not an agency. They demanded private, deliberative emails of those they know that disagree with them. They did so on false pretenses claiming a New York affiliation. And they got the district court to allow the production and filing these emails as a discovery sanction. Now, the court ultimately agreed with us that the emails can't be part of the administrative record. And it categorically excluded them. But the plaintiffs still moved to unseal so that they can use them to punish UNOS's CEO, as they say at page 37 of their brief, and any others, including private volunteers of UNOS, for their own commercial advantage. They want to chill debates and drive policymaking in ways that serve their bottom lines. Having represented a lot of companies, non-profits, educational institutions, I've seen a lot of emails about sensitive subjects produced in discovery. I mean, this is obviously, as you know, as an experienced litigator, far from the first time that emails have been produced in discovery that somebody was pretty embarrassed about. What makes this really any different than all the rest of those cases? Well, to start with, UNOS should never have been a party in this case in the first place. This is an APA case. And UNOS is not an agency. And the theory from the beginning has been that UNOS had some kind of... I mean, UNOS is an entity of which the plaintiffs are a member. They are participants in this conversation. They raised all their objections and they were outvoted. Their solution to that, their response has been to try to create and make allegations of bias by embarrassing, trying to embarrass people who specifically disagree with them on matters of liver allocation policy. That's what they say in the lawsuit that was filed in Iowa. And that's what they're trying to do with these documents here. This is simply not a proper use of the court's docket or the public's right of access. The district court didn't take any of that into account in its good cause analysis. And at a minimum, the court should remand on that basis. Last question, UNOS has not been dismissed from the case, correct? Well, that's correct. And that's because of the plaintiff's own position. The court held unequivocally on the preliminary injunction motion that UNOS was not an agency. But UNOS is still in the case, correct? That's correct. And that's because the plaintiff's declined the court's invitation to make the PI motion a ruling on the merits of the case. So they have re-briefed all the same issues, including re-argued the issue about UNOS being an agency. They have redone all of that and then filed another lawsuit in a different jurisdiction that had not yet at that time their claims. And since then it had. So that motion for summary judgment remains pending. Thank you, Ms. Coberly. Thank you both. We have your case under submission.